IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HENRY DAVIS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> VILLA SERVICES d/b/a RENTAL ) <br> BUTLER, CARIMO REAL ESTATE ) <br> & VILLA RENTALS, and EDWARD ) <br> WACHS, ) <br> ) <br> Defendants. ) <br> ) | 8:14CV137 <br><br> **MEMORANDUM** <br> **AND ORDER** |

    In this diversity action, plaintiff Henry Davis, a Nebraska resident, alleges that the defendants failed to provide him a vacation rental property in St. Martin with the amenities required by the parties' contract. The defendants have filed motions to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). (Filings 13, 17.)

## I. BACKGROUND

    In August 2013, plaintiff Henry Davis began communicating with defendant Rental Butler (a citizen of Canada with its principal place of business in Ontario) to assist in planning a family vacation to St. Martin from December 29, 2013, to January 5, 2014. (Filing 3, Amended Complaint ¶¶ 7, 13(a); Filing 60-4, Davis Aff. ¶ 2.) Rental Butler is a web-based service that connects individuals with vacation rentals located outside the United States. Rental Butler has relationships with owners and management companies for properties in Antigua, Grenada, Barbados, and St. Martin, among others. (Filing 15-1, Tarter Aff. ¶¶ 11, 12.)

In the course of planning the Davis family's vacation, Rental Butler exchanged at least 55 emails and 5 telephone calls with Davis, his significant other, and his family—who were all located in Nebraska. (Filing 60-4, Davis Aff. ¶¶ 2-4; Filing 15-1, Tarter Aff. ¶ 14.) In these emails and telephone conversations, Rental Butler made representations regarding Davis's accommodations and what he should expect while on his family vacation. These representations essentially indicated Davis was purchasing, and would receive, a luxury experience at the "Belle Etoile" property in St. Martin, including access to a full-time private chef who would prepare meals of Davis's choice; pre-stocked food provisions of Davis's choice; a concierge to aid in transportation and complete other duties; an on-site, full-time property manager to assist Davis and his guests during the trip; and exercise and spa equipment, including a hot tub. (Filing 3, Amended Complaint ¶ 9; Filing 60-4, Davis Aff. ¶¶ 8-11.)

On August 12, 2013, Davis selected the Belle Etoile property in St. Martin and asked Rental Butler to reserve the property for his vacation. (Filing 15-1, Tarter Aff. ¶ 15.) Defendant Edward Wachs (a resident of Illinois) owned the property, and defendant Carimo Real Estate & Villa Rentals (a French company) was the property manager. (Filing 19-2 ¶¶ 17, 26.)[1]

Rental Butler sent Davis a booking form, which included the terms and conditions of the agreement. (Filing 15-1, Tarter Aff. ¶ 16.) On August 13, 2013, Davis wired half of the balance of the rental ($24,890) from Nebraska to Rental Butler

---

[1] Carimo rents its properties either directly or through entities like Rental Butler. (Filing 19-2 ¶¶ 17, 26.) In 2011, Wachs contracted with Carimo to advertise and market the property for rental, and in 2012 the parties executed an exclusive rental agreement that gave Carimo the exclusive ability to advertise and market the property for rent. (Filing 19-1 ¶¶ 11, 21 & Ex. A; Filing 19-2 ¶ 22 & Ex. A.) When Carimo rents Wachs' property, it collects the money and pays Wachs anywhere between 70 and 90 percent of the money generated from the booking. (Filing 19-1, Ex. A; Filing 19-2, Ex. A & Ex. G, No. 11.)

2

in Canada and, in turn, Rental Butler sent Davis a booking confirmation via email containing the details of the rental and the statement of accounts. (Filing 15-1, Tarter Aff. ¶¶ 17, 18; Filing 60-4, Davis Aff. ¶¶ 7, 13.) The reservation confirmation and statement of accounts provided that "Sending payment constitutes acceptance and agreement to the following terms . . . .," two of which were that "[a]ll efforts will be made in the event of service disruption to readily remedy problems through arbitration" and the "[r]ental agreement is subject to the laws of Ontario, Canada where [Rental Butler] is registered with the Travel Industry Council of Ontario." (Filing 15-2, at CM/ECF pp. 2, 4.) On September 30, 2014, Davis wired the remaining balance ($24,890) to Rental Butler's bank in Canada. (Filing 15-1, Tarter Aff. ¶ 22.)

Davis alleges that, contrary to Rental Butler's representations, he and his family did not receive a "full-time private chef"; the "meals he had requested"; the "food provisions" he wanted; a "concierge"; a "villa manager"; and "typical exercise equipment." Further, Davis claims that the defendants "provided [him] with a cold hot tub" and a property "overrun with the . . . caretaker's unrestrained dogs." (Filing 3, Amended Complaint ¶ 15(a)-(g).)

Davis filed this lawsuit for breach of contract and for fraudulent or negligent misrepresentation against Rental Butler, Carimo, and Wachs. (Filing 3, Amended Complaint.) Davis claims damages in the amount of $110,868, consisting of $49,780 in rental costs, $4,000 for food, and $57,088 for transportation to the property. (Filing 3, Amended Complaint at CM/ECF p. 10.)

## II. DISCUSSION

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff must make a prima facie showing of personal jurisdiction over the defendant. *Fastpath, Inc. v. Arbela Tech. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). "A plaintiff's prima facie showing must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion." *Id*. (internal quotation marks and citations

omitted). To determine whether a plaintiff has asserted a prima facie case, the court views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor. *Id*.

Analyzing personal jurisdiction[2] is a two-step process. First, the court must determine whether the forum state's long-arm statute has been satisfied. Second, the court must decide whether exercising jurisdiction comports with the requirements of due process. Because Nebraska has construed its long-arm statute to permit jurisdiction to the limits of due process, it is only necessary to decide "whether the exercise of personal jurisdiction over [the defendants] violates due process." *Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 693 (8th Cir. 2003).

Due process requires that the defendant have sufficient minimum contacts with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice" and a non-resident defendant "should reasonably

---

[2]The Supreme Court has recognized two types of personal jurisdiction—general and specific. *Daimier AG v. Bauman*, 134 S. Ct. 746, 754, 761 (2014) (specific jurisdiction is at issue when a suit arises out of or relates to the defendant's contacts with the forum; general jurisdiction involves determining whether a defendant foreign corporation's affiliations with the forum are "so continuous and systematic as to render it essentially at home in the forum State," like the place of incorporation or principal place of business (internal quotation marks and citations omitted)). While Plaintiff's initial brief in opposition to the pending motions to dismiss requested permission to perform jurisdictional discovery because, among other reasons, "it is conceivable that Rental Butler has contacts with Nebraska sufficient to establish general jurisdiction," (Filing 20 at CM/ECF p. 11), Plaintiff's brief submitted post-discovery does not make a general-jurisdiction argument. (Filing 59.) "When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction." *Epps v. Steward Info. Svs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984); *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1103 (8th Cir.1996)).

4

anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 297 (1980) (internal quotation marks and citations omitted); *Fastpath, Inc.*, 760 F.3d at 820. "Minimum contacts is based on the notion that 'those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter.'" *Fastpath, Inc.*, 760 F.3d at 820 (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011)).

"Sufficient minimum contacts requires some act by which the defendant 'purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id*. at 821 (quoting *J. McIntyre*, 131 S. Ct. at 2787). "The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Id*. (internal quotation marks and citations omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.  This means that the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id*. (internal quotation marks and citations omitted).

To determine the sufficiency of a non-resident defendant's contacts with the forum state, the Eighth Circuit Court of Appeals uses a five-factor test:  "1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties. We give significant weight to the first three factors." *Id*. (internal quotation marks and citations omitted).

**A.  Defendant Rental Butler**

Rental Butler is a citizen of Canada, and its principal place of business is in Ontario, Canada. Rental Butler is incorporated under the laws of the province of

Ontario and is registered with the Travel Industry Council of Ontario. Rental Butler does not own real property or bank accounts in the State of Nebraska, is not registered to do business in Nebraska, and has no registered agent in Nebraska. Rental Butler does not have any offices or employees in Nebraska. In neither the booking confirmation and statement of accounts, nor in the parties' email and telephone communication, did Rental Butler consent to be subjected to the Nebraska courts. No agent or representative of Rental Butler traveled to Nebraska to conduct business with Davis, or for any other reason. Rental Butler does not, and never has, directed sales, marketing, or advertising to Nebraska and has never contracted to provide services or goods in Nebraska. Rental Butler has booked thousands of vacations for customers from around the world, and Davis is Rental Butler's only customer from Nebraska. (Filing 15-1, Tarter Aff. ¶¶ 2-10, 28-29; Filing 60-2, Ex. B, Rental Butler's Resp. to Pl.'s Interrog. No. 15.)

Rental Butler operates a website, www.rentalbutler.com, which provides general information regarding rental properties. Visitors to the site cannot book a reservation or purchase any services through the site; rather, interested visitors must call or email Rental Butler in Canada to do so. (Filing 28-1, Second Tarter Aff. ¶ 3.) Rental Butler does not actively market its website, but instead relies on customer inquiries and leads from third-parties. (Filing 60-2, Ex. B, Rental Butler's Resp. to Pl.'s Interrog. No. 15.)

Although Rental Butler exchanged emails with Henry Davis, who signed his emails with his work address at Greater Omaha Packing, Inc., in Omaha, Nebraska, Rental Butler was unaware of Davis's personal address and residence before, during, and after booking. (Filing 28-1, Second Tarter Aff. ¶¶ 6-10.) At Rental Butler, "[a]ddress information is only collected when a prospective customer submits the billing address for their credit card. . . . Unless a customer provides Rental Butler with their credit card billing address, Rental Butler would not be aware and/or collect their physical address. However, [Davis] failed or refused to provide his address despite being asked multiple times. Most customers use a credit card to pay their deposit; however, some like [Davis], pay using wire transfer. Because address information is

not required for customers to contact Rental Butler, the company would not be aware of residency of prospective customers . . . ." (Filing 60-2, Ex. B, Rental Butler's Resp. to Pl.'s Interrog. No. 8.)

Rental Butler does not advertise using mail, email, fax, or telephone; rather, it emails a newsletter to past customers and individuals who have provided their email address to Rental Butler. Independent third-party companies that generate leads through their own methods sell Rental Butler potential leads, for which Rental Butler typically pays a fixed sum. (Filing 60-2, Ex. B, Rental Butler's Resp. to Pl.'s Interrog. No. 15.)

Based on this evidence, taken in the light most favorable to the plaintiff, I conclude that defendant Rental Butler, a Canadian company with no connection to Nebraska, has not taken purposeful or deliberate action aimed at Nebraska or its residents that creates a substantial connection with Nebraska such that Rental Butler can fairly be characterized as having invoked the benefits and protections of this state's laws. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Specifically, this court's exercise of jurisdiction in this case would violate due process because (1) Rental Butler does not have minimum contacts with Nebraska and (2) maintaining the suit in Nebraska will offend traditional notions of fair play and substantial justice. *See World-Wide Volkswagon Corp.,* 444 U.S. at 291-92.

### 1. The Factors

The nature, quality, and quantity of Rental Butler's contacts with Nebraska are insufficient to support the exercise of personal jurisdiction over it. Davis has presented evidence of 55 emails and 5 telephone calls between Davis's family and Rental Butler regarding a one-time vacation rental outside the United States. The only reason Rental Butler began corresponding with Davis and his family was because Davis initiated the contact. There is no evidence of Rental Butler's intent to generally serve the Nebraska

market—to the contrary, this was a one-time sale to one Nebraska customer initiated by that customer.

Davis cannot be "'the only link between the defendant and the forum. To find otherwise would 'improperly attribute[] a plaintiff's forum connections to the defendant and make[] those connections decisive in the jurisdictional analysis.'" *Fastpath, Inc.*, 760 F.3d at 823 (quoting *Walden*, 134 S. Ct. at 1125). *See also Fastpath, Inc.*, 760 F.3d at 820, 823 (quoting *Walden*, 134 S. Ct. at 1121, 1122) ("'our minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there'"; "'the relationship must arise out of contacts that the defendant *himself* creates with the forum State'"); *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 313 (8th Cir. 1982) ("Merely entering into a contract with a forum resident does not provide the requisite contacts between a nonresident defendant and the forum state.") (internal quotation marks, parentheses, and citation omitted); *Gray v. Lewis & Clark Expeditions, Inc.*, 12 F. Supp. 2d 993 (D. Neb. 1998) (Nebraska could not exercise personal jurisdiction over nonresident corporation for injuries incurred during Wyoming river-rafting trip where corporation advertised in national publications, maintained an 800 number, and accepted plaintiff's reservation and credit card number over the telephone during a call plaintiff initiated; "this lone contact initiated by [the plaintiff] must be characterized as an isolated one that does not show purposeful availment of the Nebraska market").

Davis's causes of action are related to Rental Butler's email and telephone contact with Davis and his family only in the sense that Davis's breach of contract and misrepresentation claims are predicated on promises made during the parties' pre-trip communications. However, because the causes of action accrued in St. Martin when the Davis family actually experienced sub-par amenities at the rental property, Davis's claims cannot be characterized as arising out of the act of emailing or speaking on the telephone—that is, any alleged breach of the parties' agreement occurred outside Nebraska. *Gray*, 12 F. Supp. 2d at 998 (Nebraska plaintiffs' negligence action for injuries occurring on river rafting trip did not arise out of plaintiffs placing telephone

reservation with defendant Wyoming rafting company; defendant's duty arose when plaintiffs boarded rafts, "not when one of them picked up a phone hundreds of miles distant and days earlier").

While Nebraska obviously has an interest in providing its residents with a forum, that interest "cannot make up for the absence of minimum contacts." *Fastpath, Inc.*, 760 F.3d at 824 (internal quotation marks and citation omitted). "The same is true of the last factor—party convenience. That [Nebraska] may be a more convenient forum for [Davis] does not mean that [Nebraska] courts have personal jurisdiction over [Rental Butler]." *Id*.

### 2. Emails, Telephone Calls & Website

Plaintiff Davis argues that Rental Butler availed itself of this court's jurisdiction when it "continually communicated with Davis and his family, made misrepresentations directed at a Nebraska resident, made misrepresentations [a]ffecting only those located in Nebraska, and maintained an interactive website which could be accessed in Nebraska." (Filing 59, Pl.'s Br. at CM/ECF p. 5; Filing 20, Pl.'s Br. at CM/ECF pp. 4-5.) Davis maintains that during the course of vacation planning and booking, Rental Butler exchanged approximately 55 emails with Davis and his family, who were located in Nebraska, and participated in at least 5 telephone calls with Davis' companion, Dawn Busenbark. (Filing 59, Pl.'s Br. at CM/ECF p. 6.)

"Although letters and faxes may be used to support the exercise of personal jurisdiction, they do not themselves establish jurisdiction." *Fastpath, Inc.*, 760 F.3d at 824 (defendant's emails and phone calls to plaintiff in Iowa insufficient to establish personal jurisdiction) (internal quotation marks and citation omitted). "However, frequent communications, *when taken together with some other action directed toward the forum state*, may help establish sufficient minimum contacts." *Venteicher v. Smyrna Air Ctr., Inc.*, No. 8:09CV272, 2009 WL 3254498, at *4 (D. Neb. Oct. 8, 2009) (citing *Northwest Airlines, Inc. v. Astraea Aviation Servs. Inc.*, 111 F.3d 1386,

9

1390 (8th Cir. 1997)) (emphasis added) (multiple emails and phone calls between Tennessee corporation and Nebraska resident established personal jurisdiction in Nebraska when Tennessee corporation advertised aircraft for sale on its website, negotiated purchase knowing buyer was located in Nebraska, physically delivered aircraft to Nebraska for inspection after which parties closed on purchase and exchanged money; noting that "the most basic obligations of the contract were to be performed and actually were performed in Nebraska" and "[t]he contract contemplated results in Nebraska, and each party's performance took place in Nebraska").

In the absence of other activity directed at the Nebraska forum at large, Rental Butler's emails and telephone calls with Davis and his family cannot establish personal jurisdiction in Nebraska. *See Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1137 (8th Cir. 2015) ("telephone calls, written communications, and even wire-transfers to and from a forum state do not create sufficient contacts to comport with due process such that a foreign corporation could reasonably anticipate being haled into court there" (internal quotation marks and citation omitted)); *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (no personal jurisdiction where non-resident defendant's contacts consisted of scattered emails, phone calls, and a wire-transfer of money to forum state); *Burlington Indus. v. Maples Indus.*, 97 F.3d 1100, 1103 (8th Cir. 1996) (100 telephone calls by defendant to plaintiff were "insufficient, alone, to confer personal jurisdiction" (citation omitted)); *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996) (affirming district court's dismissal for lack of personal jurisdiction where non-resident defendant's contacts with forum state consisted of numerous faxes and letters, several phone calls in connection with the contract in dispute, and choice-of-law provision).

Davis also submits that this court has personal jurisdiction over Rental Butler "due to the level of interactivity of its website"—specifically, the website's "live chat" feature that allows Rental Butler's representatives to talk with potential customers over its website, an information-collection page that allows potential customers to input his

or her contact information, and a feature that allows customers to input their flight arrival information. (Filing 59, Pl.'s Br. at CM/ECF pp. 11-13.)

When analyzing whether a website can provide sufficient contacts for specific personal jurisdiction, the Eighth Circuit Court of Appeals looks to the "*Zippo* test," which is a "'sliding scale' to measure the likelihood of personal jurisdiction." *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

> "At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."

*Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 710-11 (8th Cir. 2003) (quoting *Zippo*, 952 F. Supp. at 1124).

First, there is no evidence that all of the features Davis characterizes as "interactive" were available on Rental Butler's website at the time Davis negotiated and booked his reservation and stayed in St. Martin; even if those features were available, there is no evidence Davis used them.[3] Most importantly for minimum-

---

[3]See Filing 60-2, Rental Butler's Resp. to Pl.'s Interrogs. No. 3 ("Plaintiff did not use live chat, nor is Rental Butler aware of anyone from Nebraska using chat."), No. 4 ("Plaintiff contacted Rental Butler via telephone and did not use the website to

11

contacts purposes, there is no evidence whatsoever that Rental Butler's website was deliberately directed at Nebraskans, and therefore no showing that Rental Butler purposefully availed itself of the Nebraska market. *Fastpath, Inc.*, 760 F.3d at 824 ("While [the defendant's] website and public webinar may have been accessed by plaintiff in Iowa and may have reached potential Iowa customers, nothing suggests that [the defendant's] marketing efforts were actively, exclusively, or even predominantly targeted at Iowa customers. Instead, [the defendant's] contacts with Iowa were merely incidental and did not constitute a deliberate and substantial connection with the state such that [the defendant] could reasonably anticipate being haled into court there.") (internal quotation marks and citations omitted).

Second, there is no evidence that Rental Butler conducts business through its website with Nebraska residents—or residents of *any* state—by transmitting computer files back and forth through its website. Rather, the evidence establishes that Rental Butler's website displays general information regarding rental properties, but visitors to the site cannot book reservations or purchase services through the site; instead, interested visitors must call or email Rental Butler in Canada. "[A] website's capacity to receive a message from a viewer does not make the website more than passive. Courts have held that a website is still considered passive and insufficient to confer jurisdiction where, as here, the only purported exchange of information available on the website is a direct link allowing a user to contact the seller and does not allow for any part of a transaction to occur online." *Nebraska Mach. Co. v. Erickson Prods., Inc.*, No. 8:14CV91, 2014 WL 6980258, at *5 (D. Neb. Dec. 8, 2014) (internal quotation marks and citations omitted).

---

submit his information."), No. 5 ("an individual cannot submit a reservation through the website. . . . Rental Butler's website did not have the form or capability to collect a customer's reservation information until the Spring of 2014, i.e., well after Plaintiff booked and completed his vacation.").

Because Rental Butler's passive website does little more than make information available to—and receive emails and telephone calls from—those who are interested in island property rentals, Rental Butler's website is not grounds for the exercise of personal jurisdiction.

### 3. Place of Contracting

Plaintiff Davis also asserts that Rental Butler has minimum contacts with Nebraska because the reservation confirmation and statement of accounts from Rental Butler to Davis provided that "[s]ending payment constitutes acceptance and agreement," and Davis performed his obligation under the contract when he wired payment from Nebraska to Rental Butler in Canada. (Filing 20, Pl.'s Br. at CM/ECF p. 6; Filing 59, Pl.'s Br. at CM/ECF pp. 8-9; Filing 60-5 at CM/ECF p. 2.)

Because "[p]ersonal jurisdiction . . . does not turn on mechanical tests or on conceptualistic theories of the place of contracting or of performance," the location in which Davis completed his obligations under the contract is irrelevant to the personal-jurisdiction inquiry. *Fastpath, Inc.*, 760 F.3d at 821 & 824 n.4 (stating that "even if the contract had been formed in [the forum state] . . . that would not vest [the forum's] courts with personal jurisdiction over [the defendant] in this case") (internal quotation marks and citations omitted).

### 4. Effects of Tortious Activity Felt in Nebraska

Finally, Davis argues that under the "Calder effects test,"[4] personal jurisdiction exists "when a defendant's tortious actions are directed at residents of the forum state where the brunt of the harm is felt." (Filing 59, Pl.'s Br. at CM/ECF pp. 10-11.) Here, Davis asserts, Rental Butler's misrepresentations were purposely directed at him, a Nebraska resident, and Davis felt the monetary loss from this transaction in Nebraska.

---

[4]*See Calder v. Jones*, 465 U.S. 783, 789-90 (1984).

"Due process allows a state to assert personal jurisdiction over a defendant based on the in-state effects of defendants' extraterritorial tortious acts only if those acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—in the forum state." *Viasystems, Inc.*, 646 F.3d at 594 (internal quotation marks, alterations, and citations omitted). This test "allows the assertion of personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state." *Johnson v. Arden,* 614 F.3d 785, 796 (8th Cir. 2010).

The "effects test" does not establish personal jurisdiction in this case because there is no evidence that Rental Butler's purported misrepresentations have a relationship to Nebraska, were aimed at Nebraska, and were intended to cause injury in Nebraska. Further, any harm resulting from the allegedly disappointing chef, missing groceries, unruly dogs, and cold hot tub was suffered in St. Martin, not in Nebraska. *Fastpath, Inc.*, 760 F.3d at 822 (in case where defendant had no employees or offices in Iowa, never traveled to Iowa to execute agreement, and allegedly breached contract outside Iowa, fact that Iowa company felt defendant's breach "does not mean that an Iowa court has jurisdiction over the non-resident defendant consistent with due process").

### 5. Conclusion

Because Davis has failed to make a prima facie showing of minimum contacts between nonresident defendant Rental Butler and Nebraska, the forum state, this court may not exercise personal jurisdiction over Rental Butler. *See Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1136-37 (8th Cir. 2015) (Swedish corporation did not have sufficient contacts with state of Missouri to justify exercise of personal jurisdiction when Swedish corporation had business relationship with consulting company in Missouri, but was not licensed to do business in Missouri, did not advertise or send employees to Missouri, and no money was received or sent to the

state); *Dairy Farmers of America, Inc. v. Bassett & Walker Intern., Inc.*, 702 F.3d 472 (8th Cir. 2012) (affirming dismissal for lack of personal jurisdiction when defendant Canadian commodities broker had business relationship with Missouri cooperative resulting in 80 transactions totaling $5 million and parties communicated by phone, email, and fax regarding delivery and billing, but Canadian corporation was not qualified to do business in Missouri forum; had no agent for service of process, offices, property, bank accounts, telephone listings, or employees in Missouri; did not advertise or promote its business in Missouri; and no employee ever entered the state); *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226-27 (8th Cir. 1987) (although New York law firm visited client in South Dakota to review documents, placed telephone calls to client in South Dakota, sent bills to client and received payment from South Dakota bank, New York law firm did not have sufficient minimum contacts with South Dakota because firm did not maintain office there, attorneys did not reside or hold law license there, firm did not advertise or solicit business in South Dakota, firm did not "actively seek out" South Dakota client, and actions giving rise to lawsuit took place outside of South Dakota).

## B.  Defendants Carimo and Wachs

Davis asserts two theories of personal jurisdiction over defendants Carimo and Wachs:  (1) agency and (2) Carimo's independent contacts with Nebraska.  Davis first argues that Rental Butler's contacts with Nebraska are imputed to Carimo and Wachs because an agency relationship existed between Rental Butler and Carimo and a sub-agency relationship existed between Rental Butler and Wachs.  (Filing 31, Pl.'s Br. at CM/ECF pp. 7-13; Filing 59, Pl.'s Br. at CM/ECF pp. 2, 19-22, 24-27; Filing 31, Pl.'s Br. at CM/ECF pp. 8-12.)  Alternatively, Davis contends that this court has jurisdiction over Carimo by virtue of Carimo's independent contacts with Nebraska.  (Filing 59, Pl.'s Br. at CM/ECF pp. 22-23.)

### 1. Agency

Davis argues that "Rental Butler's contacts with Nebraska are imputed to Carimo" because "Rental Butler acted as Carimo's agent when it rented the [p]roperty to Davis." (Filing 59, Pl.'s Br. at CM/ECF pp. 22, 25.) Further, Davis continues, Carimo was Wachs's agent for purposes of renting Wachs's property, so "Rental Butler's contacts with Nebraska are therefore imputed to Wachs." (*Id*. at CM/ECF p. 26.)

"Agency relationships . . . may be relevant to the existence of *specific* jurisdiction." *Daimier AG*, 134 S. Ct. at 759 n.13 (emphasis in original). However, even assuming an agency relationship exists between the defendants, and as discussed in detail above, Rental Butler does not have sufficient minimum contacts with Nebraska to "impute" to Carimo and Wachs.

### 2. Carimo's Contacts

Finally, Davis argues that Carimo's contacts with Nebraska support exercising personal jurisdiction over it.

Carimo is a French company with its headquarters and only office in St. Martin. Carimo rents, manages, and sells real estate only in St. Martin. Carimo does not have a registered agent in Nebraska, nor is it registered to do business in Nebraska. Carimo does not own, rent, or lease property in Nebraska; does not own personal property in Nebraska; does not have any bank accounts in Nebraska; does not pay taxes to any governmental agency in Nebraska; and does not have any employees in Nebraska. Carimo does not, and never has, directed its sales or marketing efforts at Nebraska. (Filing 19-2, Decl. Nick Guezen.)

Carimo does not advertise in Nebraska; rather, it provides information about its rentals in brochures that it distributes only on the island of St. Martin. Carimo also

16

maintains a website that provides information about its rentals. Customers cannot book reservations through Carimo's website, and no sales are conducted through it. Carimo rents its properties directly or through third-party wholesalers, and the vast majority of Carimo's sales are obtained as a result of third-party wholesalers approaching Carimo about securing rental properties. Carimo does not maintain records of its renters' primary residence. (*Id*.)

Rental Butler contacted Carimo about renting the St. Martin property for Davis and his family from December 29, 2013, through January 5, 2014. Rental Butler earned $8,200 for this rental, paid via wire transfer by Henry Davis. Rental Butler then paid Carimo for its share of the booking amount. Except for receipt of the summons in this lawsuit and what Davis may have viewed on its website, Carimo has had no communications with Davis, nor has Carimo contracted with Davis. (*Id*.)

In short, Carimo's contacts with Nebraska are even fewer than Rental Butler's contacts and, for the reasons discussed above with regard to Rental Butler, are not sufficient for this court to exercise personal jurisdiction over it consistent with the requirements of due process.

Accordingly,

IT IS ORDERED:

1.     The defendants' motions to dismiss (Filings 13 & 17) based on lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) are granted;

2.     Judgment will be entered by separate document dismissing this case without prejudice.

DATED this 17th day of July, 2015.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.